

IT IS SO ORDERED.
Signed March 5, 2014

Arthur S. Weissbrodt
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 13-51381-ASW |
| THUAN NGUYEN and HANH GIAO NGUYEN, | Chapter 7 |
| Debtors. | |
| VIEN THAO MEDIA, | Adv. Proc. No. 13-5082 |
| Plaintiff, | |
| vs. | Date: January 23, 2014 |
| THUAN NGUYEN and HANH GIAO NGUYEN, | Time: 9:00 a.m. |
| Defendants. | |

MEMORANDUM DECISION AND ORDER AFTER TRIAL

This matter came before the Court for a trial on January 23, 2014.  The Plaintiff, Vien Thao Media (hereafter "VTM"), was represented by attorney Alfred Wright.  The Defendants, Thuan Nguyen and Hanh Giao Nguyen, who are the Debtors in the underlying bankruptcy case, were represented by attorney Elias Portales.

VTM commenced this adversary proceeding on June 5, 2013.  The complaint originally asserted six causes of action, including claims under 11 U.S.C. § 727, but at trial, VTM clarified that VTM

was only proceeding with the fifth cause of action alleging fraud under 11 U.S.C. § 523(a)(2)(A), and that VTM was only proceeding with this claim against Defendant Thuan Nguyen, and not against Defendant Hanh Giao Nguyen.  As a result, the sole claim alleges that Thuan Nguyen fraudulently induced VTM to continue to allow Thuan Nguyen to use air time on VTM's radio station without intending to pay for such use.

The witnesses at trial were Tron Do (hereafter "Mr. Do") and Thuan Nguyen (hereafter "Mr. Nguyen").[1]  Having considered the testimony of these witnesses, the evidence offered at trial,[2] and the written and oral arguments of counsel, the Court finds and concludes that VTM has not established that the debt owed by Mr. Nguyen to VTM is nondischargeable under § 523(a)(2)(A).

## I. Findings of Fact

VTM and HDR Communications (hereafter "HDR") entered into a written contract in which VTM agreed to provide air time to HDR on an AM radio station.  According to the testimony of Mr. Nguyen, HDR is a business which has been in operation since early 2000, is still in operation today, and is a dba for Mr. Nguyen.

Mr. Do explained the nature of the parties' business relationship, and in this regard, Mr. Do's testimony was unrefuted. Mr. Do testified that VTM is in the business of reselling air time

---

[1] Both witnesses, but Mr. Do in particular, had limited proficiency in the English language.  At times, their testimony was difficult to follow and comprehend.  The Court has, to the best of its ability, attempted to ascertain these witnesses' actual testimony.

[2] Exhibits 1 through 3 and A through J were admitted pursuant to a stipulation of the parties.

for a Vietnamese radio station, but VTM does not own the station. According to Mr. Do, during February 2011, VTM had an agreement with AM radio station 1290 (KAZA) to purchase air time and to broadcast 24 hours per day. Mr. Do understood, and Mr. Nguyen confirmed, that HDR leased radio air time from VTM to sell advertising spots.

The contract between VTM and HDR is dated January 6, 2011, and while the signatures on the contract are not legible, there is no dispute that the contract was binding on the parties in this proceeding. The contract specified a start date of February 3, 2011, and an end date of February 2, 2012. Under the contract, HDR agreed to purchase 10 hours of air time per week at $125 per hour for a total of $1,250.00 per week between February 3, 2011 and August 4, 2011, and to purchase 10 hours of air time per week (presumably for $150 per hour, although this figure is omitted from the contract) for a total of $1,500.00 per week between August 5, 2011 and January 27, 2013. According to Mr. Do, and consistent with the contract, HDR agreed to buy 2 hours of air time per day, Monday through Friday.

The inclusion of a January 27, 2013 date in the contract is something of a curiosity, because the contract expressly provided for a February 2, 2012 end date. During cross-examination, Mr. Do, who is VTM's president, testified about the January 27, 2013 date when asked about a proposed new contract which would have covered the period of February 3, 2012 through February 2, 2013. Mr. Do testified that despite the February 2, 2012 end date, the original contract ran until January 27, 2013; however, Mr. Do was unable to explain this inconsistency or why there would be a need for a new

contract if Mr. Do's assertion were correct. Neither Mr. Nguyen nor his wife signed the proposed new contract. Nevertheless, Mr. Nguyen continued to do business with VTM after the contract's stated end date through July 2012.

Mr. Do testified that VTM received payments from Mr. Nguyen for air time under the contract, but the payments were often late. Mr. Do stated that Mr. Nguyen became delinquent, and for the period of February 2012 until May 2012, owed approximately $19,800.00. Mr. Do stated that Mr. Do told Mr. Nguyen that Mr. Nguyen needed to pay for these four months of air time.

Mr. Nguyen did not dispute the delinquency. In fact, Mr. Nguyen testified that in January 2012, HDR's business had slowed down.

Mr. Do testified that Mr. Nguyen sometimes gave Mr. Do post-dated checks for amounts past due. According to Mr. Do, at end of May 2012, Mr. Nguyen provided Mr. Do with three post-dated checks dated June 8, 2012, June 29, 2012, and July 13, 2012, and that these checks totaled approximately $18,600.00. These were the only three checks which Mr. Do identified as having been post-dated.

The three post-dated checks for June 8, June 29, and July 13 were admitted in evidence. All three checks were made payable to VTM, and were signed by Mr. Nguyen on behalf of HDR. The first check was dated June 8, 2012, was in the amount of $6,300.00, and contained a notation "Mar 2012."[3] The second check was dated June 29, 2012, was also in the amount of $6,300.00, and contained a notation "April 2012." The third check was dated July 13, 2012,

---

[3] Inexplicably, Mr. Nguyen testified that the June 8 check was for the month of May.

was in the amount of $5,880.00, and contained a notation "May 2012."

Mr. Nguyen admitted to providing these post-dated checks to Mr. Do, but was not certain whether Mr. Nguyen did so at the end of May or in early June. Mr. Nguyen conceded that with regard to the three post-dated checks for June 8, June 29, and July 13, Mr. Nguyen lacked sufficient funds to cover the checks when the checks were written. However, Mr. Nguyen also testified that it was Mr. Nguyen's intention to make every effort to obtain the funds to make payment.

Mr. Do testified that the post-dated checks were Mr. Nguyen's idea; Mr. Nguyen testified to the opposite. On this point, and for the following reasons, the Court finds that VTM has not established, by a preponderance of the evidence, that it was Mr. Nguyen's idea to post-date the checks.

This is, in large part, because Mr. Do's testimony was illogical with regard to a separate set of three checks. According to Mr. Nguyen, in late January 2012, Mr. Do and another individual came, unannounced, to Mr. Nguyen's office and demanded payment. Mr. Nguyen testified that during the January visit, Mr. Nguyen was intimidated by Mr. Do, and Mr. Do required Mr. Nguyen to provide three post-dated checks for February 8, February 28, and March 15, 2012, in the amounts of $5,500.00, $5,500.00, and $8,500.00, respectively. Mr. Nguyen testified that Mr. Do made a handwritten notation describing these three checks on an invoice dated January 30, 2012. However, according to Mr. Do, Mr. Do received these checks on February 8, February 28, and March 15, and the checks were not post-dated. Mr. Do also denied making any visit to Mr.

Nguyen's office in January 2012, and denied making any attempt to intimidate Mr. Nguyen. Mr. Do did not deny making the handwritten notation on the invoice.

Mr. Do's testimony in this regard is problematic. The February 8, February 28, and March 15 checks were sequential and were numbered 1089, 1090, and 1091. It is highly unlikely that these checks were written on separate dates. The record shows several other checks paid by HDR to VTM over the period in which the parties did business, but the only other time checks were written sequentially was when HDR provided VTM with the three post-dated checks at the end of May (or in early June) 2012. Even VTM's own counsel believed that Mr. Nguyen had provided post-dated checks to Mr. Do in January 2012, and said as much during closing argument.[4]

Mr. Do and Mr. Nguyen offered conflicting testimony on how the parties agreed the post-dated checks were to be treated. Mr. Do testified that it was Mr. Do's understanding that Mr. Do was to cash the checks on each check's date. By contrast, Mr. Nguyen testified that in January 2012, Mr. Nguyen and Mr. Do verbally agreed that Mr. Do would not cash any post-dated checks until after Mr. Nguyen had an opportunity to confirm with Mr. Do that there was money in the account to cover the checks. On this point, the Court finds that Mr. Nguyen likely told Mr. Do not to cash any post-dated checks until after confirming with Mr. Nguyen that there were sufficient funds in the account to cover the checks.

---

[4] During closing argument, Mr. Do's counsel cited post-dated checks from January 2012 as being an example of an instance when Mr. Nguyen provided post-dated checks which Mr. Nguyen later honored.

Regardless of what the parties agreed, there is no dispute that Mr. Do attempted to cash the June 8 check, without success. Mr. Nguyen testified that on June 6, Mr. Nguyen spoke with Mr. Do and told Mr. Do that there was not sufficient money in the account and asked Mr. Do to wait to cash the June 8 check. According to Mr. Nguyen, Mr. Do refused, then attempted to cash the check, which bounced. Mr. Nguyen testified that Mr. Nguyen then put a stop payment order on the June 8 check.

Consistent with Mr. Nguyen, Mr. Do testified that Mr. Do talked to Mr. Nguyen on June 14, 2012, about the June 8 check and the stop payment order, and that Mr. Do told Mr. Nguyen that Mr. Nguyen needed to make payment. Mr. Do testified that Mr. Do would not have allowed Mr. Nguyen to use the air time after June 8, 2012, if Mr. Do had known that Mr. Nguyen would stop payment on the June 8 check. As for the June 29 check, Mr. Do testified that Mr. Do went to the bank, and the bank told Mr. Do that there were insufficient funds to cash the check. Regarding the July 13 check, Mr. Do testified that Mr. Do did not attempt to do anything with it, and never tried to cash the check.

However, Mr. Do's testimony regarding the three post-dated checks received in May (or June) 2012 was confusing and/or internally inconsistent in other respects. Mr. Do testified that Mr. Nguyen stated that Mr. Nguyen would provide a cashier's check to replace the June 29 and July 13 checks, but it "never happened." However, there was evidence that Mr. Nguyen provided almost $9,000.00 in certified funds to VTM after the June 8 check was dishonored. According to Mr. Do, Mr. Do cut off Mr. Nguyen's air

time between June 23 to July 7 for non-payment,[5] but Mr. Do stated that <u>after</u> the air time was cut off, Mr. Nguyen paid $3,000.00 by cashier's check (ending 0798) to Mr. Do on <u>June 21</u> -- which was <u>before</u>, not <u>after</u>, the suspension in service. Also, Mr. Do testified that Mr. Do received a cashier's check from Mr. Nguyen on July 19, 2012 (ending 7394) in the amount of $3,450.00 to cover the February to May deficiency. Mr. Do also testified to Mr. Do's receipt of another cashier's check from Mr. Nguyen dated July 7, 2012 (ending 0830) in the amount of $2,500.00 with a notation by Mr. Nguyen that the check was "for July 9, 2012 to July 31, 2012."

There was testimony about two separate instances in which HDR's air time was suspended. There was the two-week period in June and July 2012 when HDR's air time was suspended for non-payment,[6] but there was also an earlier instance in which HDR lost air time. Mr. Do testified that for a period of three days in May 2012, there was a technical problem involving PG&E and a tower in Morgan Hill which prevented HDR from having its air time, and HDR was not charged for these days. Mr. Do stated that nothing was broadcast during these three days, not even music. Mr. Nguyen's testimony on this point was contradictory; according to Mr. Nguyen, the station broadcast music during those three days, leading Mr. Nguyen to believe that only HDR was affected.

Regardless of the reason for this three-day loss in air time, which the Court need not resolve, the evidence is unrefuted that

---

[5] On cross-examination, Mr. Do testified that the air time was terminated from June 25 to July 6.

[6] Mr. Do testified that Mr. Do was capable of selling that time to someone else, but did not do so. Mr. Do did not bill HDR for that time.

Case: 13-05082    Doc# 22    Filed: 03/05/14    Entered: 03/05/14 14:39:57    Page 8 of 13

the loss had an impact on HDR's business.  Mr. Nguyen explained that HDR lost over 50% of its income after the loss in air time, based on a loss in advertising revenue.

For this and other reasons, Mr. Nguyen testified that HDR wanted to reduce its air time from two hours to one hour per day, and made a request for such a reduction in May 2012.  According to Mr. Do, HDR made no such request in May 2012.  According to Mr. Nguyen, HDR made this request not only because of the loss in income caused by the loss of air time, but also because of a change in market conditions.  Mr. Nguyen testified that increased competition had caused the price for advertising spots to drop from $15 to $5 per spot.  Mr. Nguyen testified that because of a slowing economy, small businesses were also late in making payment to HDR.  Mr. Nguyen stated that in July 2012, HDR's air time was reduced from two hours to one hour per day, but by the end of July, HDR was provided no air time.

Mr. Nguyen provided some additional testimony regarding a business operated by Mr. Nguyen's wife.  The business was a nutritional consulting business called "Gorgeous U! Nutrition and Wellness" which started doing business in approximately 2011.  According to Mr. Nguyen, Mr. Nguyen's wife helped people shop on the internet for products, and the business drew minimal income.

## II. Conclusions of Law

VTM claims that Mr. Nguyen's debt to VTM is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), based upon a misrepresentation. Section 523(a)(2)(A) denies a discharge "for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To establish a claim of fraud under this section, a creditor must prove, by a preponderance of the evidence, each of the following five elements:

> (1) the debtor made a representation;
>
> (2) the debtor knew the representation was false at the time he or she made it;
>
> (3) the debtor made the representation with the intent to deceive;
>
> (4) the creditor justifiably relied on the representation; and
>
> (5) the creditor sustained damage as a proximate result of the misrepresentation having been made.

Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 350 (B.A.P. 9th Cir. 2012) (citing Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010)).

At trial, VTM's attorney conceded that, at best, VTM could only prove $600.00 of reasonable reliance and was only seeking damages for June 8, 2012 onward. VTM's attorney made this concession after the Court inquired how VTM could have relied, reasonably, on any assertions that other post-dated checks would be paid after it became clear by June 12, 2012 that there were insufficient funds in the account, when there was no evidence of continued assurances by Mr. Nguyen of payment. VTM's counsel stated that four days of reliance came to $600.00, total. However, the Court finds that resolution of this claim turns not on justifiable reliance, but on fraudulent intent.

The Court will assume, solely for purposes of analysis, that the post-dated checks were the equivalent of false representations by Mr. Nguyen that Mr. Nguyen would make payment in the amounts and on the dates stated on each check. However, there is no direct evidence that Mr. Nguyen lacked any intent to honor the June 8, June 29, or July 13 checks when Mr. Nguyen drafted them.

The mere fact that Mr. Nguyen post-dated the June 8, June 29, and July 13 checks is not dispositive of a fraudulent intent. Rather, the post-dating of a check could just as easily signal that the check's maker lacks funds on the date the check is written; otherwise, there is little need to post-date the check.

Circumstantially supportive of VTM, the June 8 check bounced, and Mr. Nguyen then stopped payment on the check, which could imply that Mr. Nguyen never intended to make payment. However, the support for VTM's position stops here. Mr. Nguyen testified that Mr. Nguyen intended to make payment if the funds were available, and the availability of funds depended upon payments made to HDR. Mr. Do was also on notice that Mr. Nguyen might lack funds to cover the post-dated checks. Mr. Nguyen had told Mr. Do not to cash any of the post-dated checks until after Mr. Do confirmed with Mr. Nguyen that there were funds in the account to cover the checks. In any event, the court finds that Mr. Do understood, when he received the post-dated checks, that Mr. Nguyen would endeavor to add sufficient funds into his account to cover the checks but that those funds were not in the account when the post-dated checks were given to Mr. Do. Mr. Nguyen also testified that the unexpected three-day interruption in HDR's air time in May 2012 diminished HDR's funds and ability to make payment. After stopping payment on

the June 8 check, Mr. Nguyen provided almost $9,000.00 in certified funds to Mr. Do to enable HDR to continue doing business with VTM. Although the payment of $9,000.00 did not satisfy the entire deficiency, such payment is circumstantially supportive of Mr. Nguyen's assertion that Mr. Nguyen intended to honor his payment obligations.

On this issue, the Court finds that VTM has not met its burden of proof. Moreover, on balance, the evidence supports Mr. Nguyen's assertion that Mr. Nguyen lacked a fraudulent intent. In any event, VTM has the burden of proof on the issue of Mr. Nguyen's alleged fraudulent intent and failed to satisfy that burden. Therefore, the Court concludes that VTM cannot prevail on its claim against Mr. Nguyen.

## III. Conclusion

Plaintiff VTM has not established its claim under § 523(a)(2)(A) by a preponderance of the evidence. Therefore, judgment shall enter in favor of the Defendants on such claim.

IT IS SO ORDERED.

Court Service List

** All parties served electronically by ECF